**RE/MAX OF TEXAS, INC., Appellant,**

v.

**The KATAR CORPORATION, Appellee.**

**No. 01–96–01047–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 24, 1997.

Rehearing Overruled Sept. 23, 1997.

Paul Leggett, Houston, for Appellant.

Steven P. Kearney, David C. Holmes, Houston, for Appellee.

Before TAFT, COHEN and O'CONNOR, JJ.

OPINION

TAFT, Justice.

This is an unusual case where the party who first defaulted on its payment obligation successfully sued the other party for its subsequent breach. We decide whether a party who has the contractual right to terminate a contract because of default by the other party also has the right to terminate part of the contract. We uphold the trial court's decision that partial termination constituted a breach of the contract.

### Background

In July 1987, appellant, RE/MAX of Texas, Inc. (RE/MAX), and appellee, Katar Corporation (Katar), owned by A.M. and Ruth Attar, entered into a license agreement. The agreement provided Katar with the exclusive right to operate a RE/MAX realty office franchise in the Houston Galleria area. No other RE/MAX franchises could locate in the map grid assigned to Katar, and no other RE/MAX franchisee could operate an office within one mile of Katar's office. The exclusivity provision was critically important to the Attars, because the value of the franchise would be significantly diminished if other RE/MAX franchisees could set up offices in Katar's territory. In exchange for the grant of the exclusive franchise in the Galleria area, Katar agreed to pay certain fees to RE/MAX.

In early April 1990, the Attars had many agents in the office who shared overhead expenses, management fees, and advertising costs under the franchise agreement. Katar collected these fees and sent part of them to RE/MAX on a monthly basis. The Attars heard that a nearby RE/MAX franchisee had sold her franchise for a profit. They decided it would be a good time to sell their franchise. The other franchisee told the Attars she contacted RE/MAX's regional office to assist her in finding a buyer for her franchise. RE/MAX International advertises in trade magazines for persons interested in buying franchises. The franchise agreement also required RE/MAX's approval of any buyer.

Many of the agents became nervous when they heard the Attars were selling the franchise, and left. Therefore, the Attars had trouble making the monthly payments to RE/MAX. In late April 1990, Katar defaulted on monthly fees due to RE/MAX under the agreement. RE/MAX sent Katar notice to cure letters giving the Attars 10 days to cure the financial deficiencies or else RE/MAX would terminate the franchise. RE/MAX sent the same "notice to cure" form letter to

Katar in April, July, and August. RE/MAX never sent notice that it would revoke the exclusivity of the franchise if Katar did not cure its delinquency.

Meanwhile, Joe Compian, of RE/MAX, was helping Katar find a buyer. Compian negotiated with Henry Heldner, a potential buyer, from May or June, 1990 to October 1990. RE/MAX and Katar agreed Katar would pay RE/MAX the delinquent payments from the sale of the franchise. Many of the remaining agents got nervous about whether the sale was going to go through, and more agents left. Heldner changed his mind about buying and the deal fell through.

The Attars called in an attorney, Don DeGrasse, and contacted RE/MAX regional marketing director, Richard Philip, asking if he had any more potential buyers. The Attars requested Philip get a letter of intent, a signed purchase agreement and some earnest money from any potential buyers because time was of the essence. Compian and DeGrasse negotiated a sale with another potential buyer, Francisco Milan/Noble Trading Group (MN). The sale was set to close on January 7, 1991. The parties understood Katar would pay the delinquent fees to RE/MAX at the closing of the sale of the franchise. On October 23, 1990, DeGrasse sent Compian a letter stating Katar had debt which must be paid at the closing of the sale of the franchise, including the $7,000 of delinquent fees owed to RE/MAX. Katar remained in default.

On November 30, 1990, RE/MAX sent notice to Katar it was terminating the exclusivity provision of the franchise agreement. RE/MAX stated in its letter it would reinstate the exclusivity of the franchise upon Katar paying the entire amount of delinquent fees. RE/MAX also made clear that despite the change in the nature of the license to a nonexclusive franchise, Katar was expected to maintain the same responsibilities it had assumed under the exclusive franchise.

On January 2, 1991, Compian faxed a letter to DeGrasse stating RE/MAX would accept 50% of the past due fees to cure the default and the franchise would transfer to the buyer as nonexclusive. On January 3, 1991, MN's attorney sent a letter to De-

Grasse stating she had received a copy of Compian's January 2 fax and MN would not be interested in acquiring the franchise on a nonexclusive basis. On January 4, 1991, Katar offered to pay RE/MAX 100 percent of the delinquent fees in exchange for transfer of the license as an exclusive franchise to the buyer. On January 7, 1991, Compian refused to agree to reinstate the exclusivity provision of the franchise upon transfer of the license to the new buyer even if Katar paid the entire amount of delinquent fees. On January 15, 1991, RE/MAX sent Katar a letter giving it seven days to cure the seven-month default or RE/MAX would terminate the franchise agreement. Katar did not cure the default. RE/MAX terminated the franchise.

Katar sued RE/MAX alleging: (1) RE/MAX breached the franchise agreement; and (2) RE/MAX tortiously interfered with Katar's pending sale of the franchise to a third party. After a bench trial, the trial court found in favor of Katar on the breach of contract claim and awarded $65,000 in actual damages. The trial court found against Katar on its tortious interference claim, but Katar does not challenge that finding. RE/MAX appeals the breach of contract disposition in eight points of error.

### Standard of Review

We interpret RE/MAX's arguments, and relief requested, as raising claims of legal insufficiency or "no evidence." In deciding legal sufficiency we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988, no writ). If there is more than a scintilla of evidence to support the finding, we must overrule the legal insufficiency challenge. *Joseph*, 749 S.W.2d at 923.

### Breach by RE/MAX

In RE/MAX's first, second, seventh, and eighth points of error, it contends the trial court erred in finding: (1) the license did not

allow RE/MAX to terminate the exclusivity of Katar's franchise in the event of Katar's default; and (2) therefore RE/MAX breached its agreement with Katar by unilaterally terminating the exclusivity of Katar's franchise.

■ RE/MAX does not offer any argument or authority challenging the trial court's interpretation of the license agreement or the trial court's finding that RE/MAX breached the contract. In the fact section of its brief, RE/MAX cites paragraph 9(C) of the license agreement as authority for terminating the exclusivity provision of the contract. It provides:

> Upon occurrence of a default and at any time thereafter during the continuation of such default, RE/MAX shall have the right but shall not have the obligation, *to terminate this Agreement.* Termination of this Agreement by RE/MAX shall not be an exclusive remedy and shall not in anyway effect the rights of RE/MAX to receive or collect fees or other amounts payable by Licensee hereunder, to enforce the provisions of this Agreement against the Licensee, *or to sue for damages* including but not limited to all sums due and owing pursuant to the terms hereof, interest, court costs and attorneys' fees, seek and obtain injunctive relief or to pursue any other legal or equitable remedy available to RE/MAX.

(Emphasis added.)

The terms of the agreement do not provide RE/MAX the right to change the franchise from exclusive to nonexclusive in the event of default. Terminating the franchise and terminating the exclusivity of the franchise are not the same. Without exclusivity, the value of the franchise was diminished. RE/MAX had never sold a nonexclusive franchise at the time it revoked Katar's exclusivity provision. Upon learning the franchise was nonexclusive, MN refused to close the sale. The Attars would never have bought a nonexclusive franchise.

Despite RE/MAX's termination of the most valuable part of the license, the exclusivity provision, Katar remained bound by the license agreement and continued to incur liability for the fees originally agreed to under the exclusive agreement. RE/MAX argues it had the right to cancel any part of the license it chose because it had the right to terminate the whole of the license. We disagree. By analogy, a jeweler who sells a diamond ring on installment payments may have the right to repossess the ring upon default by the buyer. However, the jeweler does not have the right to replace the diamond with a cubic zirconia and then hold the customer to the original contract price.

We conclude there is more than a scintilla of evidence supporting the trial court's determination that RE/MAX breached the license agreement by terminating the exclusivity portion of the agreement. We overrule RE/MAX's first, second, seventh and eighth points of error.

### Was Breach Excused?

■ In RE/MAX's third point of error, it contends the trial court erred in finding its breach of contract was not excused by Katar's default on the monthly fees.[1] RE/MAX claims that Katar's default on the monthly fees was a material breach of the license, and therefore, RE/MAX's later breach is excused and Katar is estopped from suing RE/MAX for breach of contract. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex.1994). Excuse and estoppel are affirmative defenses. TEX.R. CIV. P. 94. If an affirmative defense is not plead or tried by consent, it is waived. *See Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 483 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

---

1. Katar argues this Court may not review the trial court's finding that Katar's default was not a material breach because RE/MAX does not attack that finding by point of error. *See Whitehead v. University of Texas Health Science Center at San Antonio,* (Tex.App.—San Antonio 1991, no writ), *aff'd* 858 S.W.2d 335 (Tex.1993). The trial court's findings of fact state Katar's nonpayment of fees did not excuse RE/MAX's breach of the contract. The trial court therefore must have found Katar's default was not a material breach of the license agreement. However, there is no specific finding using that language. RE/MAX's point of error repeats the trial court's finding. Therefore, RE/MAX does not waive review of that finding on the basis of the wording of its point of error.

Texas Rule of Civil Procedure 67 provides for trial by consent. Evidence relevant to other pled causes of action does not amount to trial by consent of a newly requested cause of action even when raised by a trial amendment. TEX.R. CIV. P. 67; *Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Trial by consent is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unplead issue. *Stephanz,* 846 S.W.2d at 901. It is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation. *Id.* To determine whether the issue was tried by consent, the Court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Id.*

RE/MAX did not plead the affirmative defenses on which it now relies. RE/MAX's only answer was a general denial. Katar presented evidence it defaulted on its payments to RE/MAX. The letters of correspondence admitted as exhibits to prove RE/MAX's breach of contract included discussion of the delinquent fees. That information was necessary to a full understanding of the background of the case leading to RE/MAX's termination of the exclusivity provision. RE/MAX did not present evidence to establish excuse or estoppel. There is no trial amendment, nor does RE/MAX claim it requested a trial amendment. At trial, RE/MAX argued the contract allowed it to terminate the exclusivity provision; RE/MAX did not argue excuse or estoppel. RE/MAX did not file proposed conclusions of law and did not request or submit findings of fact on excuse or estoppel.

RE/MAX relies on the trial court's having entered a finding that Katar's default did not excuse RE/MAX's breach. However, in the trial court's order denying the motion for new trial, it stated RE/MAX raised the defense of excuse for the first time in its motion for new trial. Without a proper pleading raising an affirmative defense, and in the absence of trial by consent, the issue was not properly before the trial court. Therefore, the trial court did not have authority to include such a finding in its judgment. *See Scurlock Permian Corp.,* 869 S.W.2d at 483 (affirmative defense of constitutionality).[2] Accordingly, we overrule RE/MAX's third point of error.

### Damages

In RE/MAX's fourth point of error, it contends the trial court erred in finding $65,000, if paid now in cash, would fairly and reasonably compensate Katar Corporation for its damages proximately caused by RE/MAX's failure to comply with the agreement. RE/MAX does not address this point of error by argument, authority or citation to the record, except possibly by arguing that RE/MAX did not breach the license agreement. We overruled that argument above. Accordingly, we overrule RE/MAX's fourth point of error.

In RE/MAX's fifth point of error, it contends the trial court erred in finding $65,000, representing the loss of the sale to MN, was a natural, probable and foreseeable consequence of the failure to comply with the agreement. We do not find any argument, authority, or reference to the statement of facts in RE/MAX's brief supporting this point of error. We have nothing to review. TEX.R.APP. P. 74(d); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.,* 889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied). We overrule RE/MAX's fifth point of error.

### Attorney's Fees

In RE/MAX's sixth point of error, it contends the trial court erred in finding $28,000 was a reasonable fee for the necessary services of Katar Corporation's attorney in this case. RE/MAX does not present any argument or authority nor does it direct us to any place in the record supporting its point of error. Therefore, we have nothing to review under TEX.R.APP. P. 74(d). We overrule RE/MAX's sixth point of error.

---

**2.** It appears the trial court may have mistakenly believed Katar was required to prove its nonpayment of fees was not a material breach as an element of recovery.

### Conclusion

We affirm the trial court's judgment.