## RE/MAX OF TEXAS, INC., Petitioner,

v.

## The KATAR CORPORATION, Respondent.

No. 97–1049.

Supreme Court of Texas.

Feb. 4, 1999.

Rehearing Overruled April 1, 1999.

Geoffrey D. Weisbart, Cindy Olson Bourland, Austin, Howard M. Bookstaff, Paul C. Leggett, Peter M. Henk, Houston, for Petitioner.

Steven Paul Kearney, Houston, David C. Holmes, Austin, for Respondent.

Justice HECHT, dissenting from the denial of petition for review.

The dispositive question in this case is: can a franchisee who contracts for an exclusive right to operate a business in a specified geographical area sue for a breach of that right if the franchisee is delinquent in payment of the agreed franchise fees. The lower courts answered in the affirmative.[1] I disagree and would grant the petition for review. Because the Court denies the petition, I respectfully dissent.

RE/MAX of Texas, Inc. licensed the Katar Corporation to operate a RE/MAX realty office franchise in a designated area for certain monthly fees. Their agreement provided that RE/MAX would not franchise another office in Katar's area or within one mile of Katar's office. After two years of operations, Katar decided to sell its franchise and enlisted RE/MAX's assistance in locating a buyer. About the same time Katar began to default in the payment of its fees to RE/MAX. For several months RE/MAX repeatedly notified Katar that it was in default of their agreement and that failure to pay the fees would result in termination of the franchise. Still, RE/MAX continued to help Katar find a buyer for the office, and the parties discussed Katar's payment of the delinquent fees from the proceeds of an eventual sale of the office. When Katar had missed more than six months' payments, however, RE/MAX notified Katar that it would no longer honor the exclusivity provision of their agreement unless all fees were paid current. By this time Katar had found a buyer for the office, but the buyer was not interested in the franchise without the exclusivity provision. RE/MAX refused to offer the proposed buyer the same exclusive franchise Katar had had, even if the delinquent fees were paid in full. The sale did not take place, and RE/MAX terminated Katar's franchise.

Katar sued RE/MAX for breach of contract and tortious interference with its prospective sale of the office. RE/MAX did not counterclaim for Katar's delinquent fees. After a bench trial, the district court rendered judgment for Katar on its contract claim and against Katar on its interference claim. Only RE/MAX appealed. The court of appeals affirmed.[2]

The core of the appeals court's analysis is as follows:

Despite RE/MAX's termination of the most valuable part of the license, the exclusivity provision, Katar remained bound by the license agreement and continued to incur liability for the fees originally agreed to under the exclusive agreement. RE/MAX argues it had the right to cancel any part of the license it chose because it had the right to terminate the whole of the license. We disagree. By analogy, a jeweler who sells a diamond ring on installment payments may have the right to repossess the ring upon default by the buyer. However, the jeweler does not have the right to replace the diamond with a cubic zirconia and then hold the customer to the original contract price.[3]

The jeweler analogy reveals the flaw in the court's reasoning: RE/MAX, unlike the jeweler, never attempted to enforce Katar's payment of fees. Unquestionably, RE/MAX had no unilateral right to reshape its agreement with Katar, but it asserted none. Rather, after Katar was in default for more than six months, RE/MAX simply refused to continue the agreement on an exclusive basis. Once RE/MAX made that decision, Katar was no longer obligated to continue paying monthly fees, but RE/MAX did not insist that Katar do so. In fact, RE/MAX never even sued Katar for the delinquent fees while the exclusivity provision remained in effect.

A franchisee cannot refuse to pay franchise fees contracted for and then complain when the franchisor refuses to continue the arrangement on the same basis. "A fundamental principle of contract law is that when one party to a contract commits a material

1. 961 S.W.2d 324.

2. *Id.*

3. 961 S.W.2d at 327.

breach of that contract, the other party is discharged or excused from any obligation to perform."[4] Having breached the license agreement by failing to pay franchise fees over a period of months, Katar cannot complain that RE/MAX refused to continue the exclusive arrangement for the office, even if the delinquency was brought current. As I have already stated, Katar's breach did not entitle RE/MAX to require payment of the same fees for a nonexclusive arrangement, but RE/MAX never imposed such a requirement. It simply exercised its right not to continue the franchise on the same terms as before.

Ironically, if RE/MAX had terminated the franchise the first time Katar missed a payment, it would have had no liability to Katar. But because RE/MAX tried for months to help Katar find a buyer for Katar's business, it not only cannot collect the fees Katar never paid, it owes Katar damages. This unjust result and the contravention of what ought to be settled law should be corrected.

Accordingly, I would grant RE/MAX's petition for review, reverse the judgment of the court of appeals, and render judgment for RE/MAX.

4. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994). *See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex.1981) ("Default by one party excuses performance by the other party."); *Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065, 1068 (1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach."); RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").