COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-265-CV
   
 
  
IN THE INTEREST OF A.J.J. AND 
S.R.J.,
CHILDREN
 
  
  
------------
 
FROM THE 393RD DISTRICT COURT 
OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
this child support modification case, Robert Paul J. appeals from an adverse 
judgment for Jean Zanker J. In three issues, Robert contends that the trial 
court abused its discretion by denying his request to reduce his child support 
obligation, by actually increasing it instead, and by awarding Jean attorney’s 
fees. Robert asserts that the uncontroverted evidence shows that he 
involuntarily lost his employment and earns considerably less than when the 
child support obligation was first established, that Jean did not countersue for 
an increase in child support, that the issue was not tried by consent, and that 
the trial court abused its discretion by awarding Jean attorney’s fees.  
We will affirm.
        The 
parties were divorced in July 1997 and, in the agreed final divorce decree, 
Robert was ordered to pay $900 per month for the support of the parties’ two 
children, A.J.J. and S.R.J.  In January 2003, Robert petitioned to reduce 
his child support obligation.  Jean filed a general denial and asked 
“that the Court make proper orders for the support of the children.”  
After a hearing, the trial court denied Robert’s request to reduce child 
support, granted Jean an increase in child support to $1,361.81 per month, and 
awarded Jean $1,500 in attorney’s fees.  This appeal followed.
        In 
his first issue, Robert complains that the trial court abused its discretion by 
denying his request for a reduction in child support and by increasing his child 
support obligation instead, because the uncontroverted evidence shows that he 
was involuntarily terminated from his last employment, has made reasonable but 
unsuccessful efforts to replace his lost income, and now earns considerably less 
than he did when the original $900 child support obligation was established.
        The 
trial court has broad discretion in setting and modifying child support payments 
and, absent a clear abuse of that discretion, we will not disturb the trial 
court's order on appeal.[2]  To determine whether 
a trial court abused its discretion, we must decide whether the trial court 
acted without reference to any guiding rules or principles, in other words, 
whether the act was arbitrary or unreasonable.[3]  
Merely because a trial court may decide a matter within its discretion in a 
different manner than an appellate court would in a similar circumstance does 
not demonstrate that an abuse of discretion has occurred.[4]
        Legal 
and factual sufficiency of the evidence are relevant factors for use in 
determining whether an abuse of discretion has occurred, but they are not 
independent grounds for asserting error.[5]  An 
abuse of discretion does not occur as long as some evidence of substantive and 
probative character exists to support the trial court’s decision.[6]  We will not reverse the trial court's judgment 
merely because we consider the amount of the child support award either too high 
or too low.[7]
        To 
be entitled to a reduction in his child support obligation, Robert had the 
burden of proving either that:
   
•the circumstances of the child or a person affected by the child support 
order had materially and substantially changed since the date of the order’s 
rendition; or
  
•it 
had been three years since the child support order was rendered or last modified 
and the monthly amount of the child support award under the order differed by 
either 20 percent or $100 from the amount that would be awarded in accordance 
with child support guidelines.[8]
 
        Robert 
asserts that the evidence he presented at trial regarding the reduction in his 
income satisfied both of these burdens. But there is no evidence in the record 
regarding what Robert’s income was at the time the trial court entered the 
child support order as part of the 1998 agreed decree of divorce.
        Robert 
did put on evidence of his income in March 2001, when the trial court modified 
the possession and access provisions of the divorce decree. March 2001 is not, 
however, “the date of the order’s rendition” for purposes of proving a 
material and substantial change in circumstances because the March 2001 order 
did not modify the child support provisions in the divorce decree.[9]  Therefore, Robert did not prove that his 
circumstances had materially and substantially changed since the date of the 
child support order’s rendition in 1998,[10] and he 
was not entitled to a reduction in his child support obligation unless he 
established that the $900 child support award in the divorce decree differed by 
either 20 percent or $100 from the amount that would be awarded in accordance 
with child support guidelines.[11]
        The 
family code provides that a parent of two children with monthly net resources of 
less than $6,000 should pay 25 percent of his net resources for child support.[12]  “Net resources” include, among other things, 
100 percent of all wage and salary income, self-employment income, severance 
pay, and unemployment benefits.[13]
        Applying 
these principles to the child support guidelines, a $900-per- month child 
support obligation for two children would correspond to a gross annual income of 
approximately $57,000, or $3,588.62 net monthly income.[14]  
Thus, to meet his burden of showing a 20 percent or $100 difference under 
section 156.401, Robert was required to prove that his gross annual income had 
dropped to less than $50,000, or $3,180.81 net monthly income.[15]  
As we discuss below, there is evidence from which the trial court reasonably 
could have concluded that Robert’s net resources had not fallen below this 
level.
        The 
record shows that, in mid-January 2003, Robert was laid off from his job as a 
manager for a mobile DSL company because his position was eliminated. After the 
lay off, Robert had made some efforts to find another job, but his preference 
was to support himself through self-employment. Toward that end, while he was 
still employed, Robert had started two businesses in March and November 2002 — 
a concessions company and a personal services company.
        After 
his mid-January 2003 layoff, Robert’s sources of income included unemployment 
benefits of “a little over $300 a week” and an unspecified amount of 
severance pay from his former employer.[16]  In 
addition, Robert had income from his two businesses.
        By 
October 2003, the personal services company had posted a profit of 
$731.72.  The concessions company had posted a loss of $34,635.02 in 2002, 
which included $8,400 for depreciation of the company’s equipment.  
Robert did not know whether the company would make a profit in 2003, but its 
bank records for the first six months of 2003 showed deposits of 
$39,870.89.  In addition, Robert testified that he planned to use the 
income from his businesses to pay his living expenses once his unemployment ran 
out.
        Despite 
the fact that Robert was not entirely forthcoming about the amount of his 2003 
income, the trial court reasonably could have concluded from the evidence that 
Robert’s annual income had not dropped below $50,000 and that his net 
resources would not have warranted a 20 percent or $100 reduction in his child 
support obligation.[17]  Accordingly, Robert did 
not meet his burden of proof under section 156.401, and the trial court did not 
abuse its discretion by denying his request to reduce his child support 
obligation.[18]
        Next, 
Robert complains that the trial court abused its discretion by increasing the 
amount of his child support obligation from $900 to $1,361.81 per month despite 
evidence that he had been terminated involuntarily from his employment in 
January 2003 and was earning considerably less than his $93,000 annual salary at 
the time of his layoff.
        The 
trial court found that Robert’s earning capacity was at least $93,000 per 
year, that he had chosen not to seek salaried employment, that he was 
voluntarily unemployed or underemployed, and that “it is possible that 
[Robert’s] annual income for 2003, combining his income from [his concessions 
and personal services companies], his severance package, and his employment 
benefits, will exceed $93,000.00.” The trial court further found that 
Robert’s net resources had increased sufficiently since the 1998 child support 
order so that his child support obligation should be increased, in accordance 
with the child support guidelines, to $1,385.06 per month.[19]  
Robert complains that the evidence does not support these findings.
        A 
parent’s duty to support his children is not limited to his ability to pay 
from his current earnings, but also extends to his financial ability to pay from 
any and all sources that might be available to him.[20]  
The trial court may also take a parent's earning potential into account when 
determining the amount of child support the parent must pay.[21]  
In determining earning potential, the court may consider a parent’s 
unemployment or underemployment if there is evidence that the parent reduced his 
income in order to decrease his child support payments.[22]  
The requisite intent may be inferred from the parent's business reversals, 
business background, and earning potential, while keeping in mind the parent’s 
right to pursue his own happiness.[23]  If the 
evidence shows that the parent’s actual income is significantly less than his 
potential income due to intentional unemployment or underemployment, the trial 
court may apply the statutory child support guidelines to the parent’s 
potential income rather than his actual income.[24]
        In 
this case, Robert put on evidence that, after losing his $93,000-per-year job 
involuntarily, he had attempted to find a new job by placing his resume on an 
internet web site, doing job searches on the internet, checking job listings in 
trade journals, networking and maintaining his contacts with people in the 
industry, and checking with AT&T, for whom he had formerly worked as a 
technician.  As a result of these efforts, he had concluded that “[t]here 
just aren’t any positions for managers in the technical field right 
now.”  He further testified that he had no skills that were easily 
transferable to another field.
        There 
is no evidence, however, regarding the frequency of his job searches or when he 
had last searched for employment.  Further, he had not sent out any resumes 
to prospective employers; he had simply posted his resume on the internet so 
employers could contact him.  Most importantly, Robert testified that, 
instead of getting back into his former field, he would rather be self-employed, 
get his own businesses going, and work for himself.  From this evidence, 
the trial court reasonably could have concluded that Robert’s unemployment or 
underemployment was intentional.
        Further, 
the trial court reasonably could have concluded that Robert’s earning capacity 
was at least $93,000 per year.  In 2002, Robert had opened and operated his 
two businesses on a part-time basis for several months before his 
termination.  Although he lost money on the concessions business in 2002, 
it is reasonable to expect that his first year of operations would have had 
expensive start-up costs and that the business would generate more income in 
2003 since Robert could pursue it full-time. Indeed, the $39,870.89 of income 
reflected in the concessions business’s bank deposits for the first six months 
of 2003, extrapolated over twelve months, would be $79,741.78.[25]
        In 
addition, Robert had received at least $12,900 in unemployment benefits in 2003, 
income of $731.72 from his personal services business, and an unspecified amount 
of severance from his former employer. All of this evidence supports the trial 
court’s finding regarding Robert’s earning capacity.
        Finally, 
Robert sought to have his child support obligation reduced to the amount he 
would have owed if his only income was his “just over $300 per week” in 
unemployment benefits. His child support obligation based on that income would 
have been only $282 per month. In light of Robert’s business background, his 
earning potential, his lack of forthrightness about his income for 2003, and his 
desire to have his child support payments adjusted based on the amount of his 
unemployment benefits, the trial court reasonably could have concluded that 
Robert’s unemployment or underemployment was for the purpose of reducing his 
child support payments.[26]  Accordingly, we 
hold that the trial court did not abuse its discretion by calculating Robert’s 
child support obligation based on his earning potential and by increasing the 
amount of his child support obligation accordingly.  We overrule Robert’s 
arguments regarding the amount of his child support obligation.
        Robert’s 
final argument under his first issue is that the trial court erroneously 
admitted into evidence Jean’s exhibits 1, 3, and 4.  Robert asserts that 
exhibit 1, which consists of copies of bank statements from his concessions 
business bank account, should not have been admitted because it is 
hearsay.  Robert acknowledged at the modification hearing, however, that he 
had produced the bank statements to Jean in response to discovery 
requests.  Therefore, the bank statements were not hearsay because they 
were admissible as admissions by a party opponent.[27]
        Robert 
also objects to the admission of exhibits 3 and 4, which are a summary of the 
bank deposits for his concessions business account and a table of child support 
calculations based on the family code’s child support guidelines. He complains 
that these exhibits do not qualify as summaries.
        The 
contents of voluminous, admissible writings may be presented in the form of a 
chart, summary, or calculation.[28]  Exhibit 3 
is a summary of the bank deposits recorded on the bank statements that we have 
held were admissible.  Moreover, regarding exhibit 4, Robert’s counsel 
stated, “I certainly don’t mind you looking at the child support obligation, 
what it would be, as an exhibit, as a demonstrative piece of evidence, that’s 
fine.”  Accordingly, the trial court did not err by admitting exhibits 3 
and 4. We overrule Robert’s first issue.[29]
        In 
his second issue, Robert asserts that the trial court abused its discretion by 
increasing his child support obligation because Jean did not request the 
increase in her pleadings and the issue was not tried by consent.
        As 
long as the trial court has jurisdiction over the case, technical pleading rules 
are of little importance in determining issues concerning child custody and 
support matters.[30]  In this case, the trial 
court’s jurisdiction to decide the child support issue is not in 
dispute.  Further, Robert’s petition asked the trial court to reduce his 
child support obligation due to a material and substantial change in 
circumstances, and Jean’s response asked the trial court to “make proper 
orders for the support of the children.”  These pleadings are sufficient 
to support the increase in child support.[31]  
Accordingly, we overrule Robert’s second issue.[32]
        In 
his third issue, Robert contends that the trial court abused its discretion by 
awarding Jean attorney’s fees.  Robert asserts that the fees were not 
necessary because he merely requested that his child support obligation be set 
in accordance with child support guidelines after he involuntarily lost his 
job.  He further asserts that there is little or no evidence supporting the 
fee award.
        The 
award of attorney's fees in a suit affecting the parent-child relationship is 
within the trial court's discretion.[33]  
Because a parent has an obligation to support his minor children, the fees may 
be awarded as necessaries for the children.[34]  
The fee award must, however, be supported by evidence regarding the hours spent 
on the case, the nature of preparation, the complexity of the case, the 
experience of the attorney, and the prevailing hourly rates.[35]  
Sworn testimony from an attorney concerning attorney's fees is considered expert 
testimony.[36]
        In 
this case, Jean’s attorney testified that she had been licensed for nearly ten 
years and that her practice was 90 to 95 percent family law.  In addition, 
she testified that her hourly rate was $175, which was reasonable and necessary 
in Denton County for this type of case.  She further testified that she had 
charged Jean $1500 to represent her, which included conducting discovery, 
conducting research, preparing a motion for new trial,[37] and 
preparing for the hearing on the motion to modify child support. Robert had the 
opportunity to cross-examine Jean’s attorney about the reasonableness and 
necessity of her fees, but he did not do so.
        Although 
Jean’s attorney did not specify the number of hours she had spent on the case, 
the trial court was within its discretion in concluding from the other 
information given in her testimony that the $1500 amount charged was reasonable 
and in awarding the fees as necessaries for Robert’s children.[38] We overrule Robert’s third issue.
        Having 
overruled all of Robert’s issues, we affirm the trial court’s judgment.
      
   
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
   
    
PANEL A:   CAYCE, 
C.J.; HOLMAN, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
DELIVERED: April 21, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
In re P.J.H., 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.).
3.  
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied, 476 U.S. 1159 (1986).
4.  
Id.
5.  
In re J.E.P., 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.).
6.  
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).
7.  
P.J.H., 25 S.W.3d at 405.
8.  
Tex. Fam. Code Ann. § 156.401(a) 
(Vernon Supp. 2004-05).
9.  
See Ritter v. Wiggins, 756 S.W.2d 861, 864 (Tex. App.—Austin 1988, no 
writ) (holding that date of divorce decree was relevant date from which to 
reference material change in conditions where later-entered modification order 
did not concern child support obligations).
10.  
See Tex. Fam. Code Ann. § 
156.401(a)(1).
11.  
See id. § 156.401(a)(2).
12.  
Id. § 154.125(b) (Vernon 2002).
13.  
Id. § 154.062(b).
14.  
See id. § 154.061(b) tax charts (Vernon Supp. 2004-05).
15.  
See id. § 156.401(a)(2); see also id. §§ 154.061(b) tax charts, 
154.125(b).
16.  
Robert testified that he did not know how much severance pay he had 
received.  Because Robert was not laid off until January 2003, we disagree 
with his contention that the severance package should not have been included in 
the trial court’s calculation of his 2003 income.
17.  
See Tex. Fam. Code Ann. § 
156.401(a)(2).
18.  
See Butnaru, 84 S.W.3d at 211; Downer, 701 S.W.2d at 241-42.
19.  
The trial court calculated Robert’s net resources to be $5,540.22, based on 
his earning capacity of $93,000, and then, in accordance with the child support 
guidelines, calculated his child support obligation for two children at 25 
percent of that amount, or $1,385.06.  See Tex. Fam. Code Ann. § 154.125(b).  
This amount differs by more than 20 percent or $100 from Robert’s 
$900-per-month child support obligation in the 1998 child support order, see 
id. § 156.401(a)(2); however, the trial court only increased his monthly 
child support obligation to $1,361.81.
20.  
P.J.H., 25 S.W.3d at 406; In re Striegler, 915 S.W.2d 629, 638 
(Tex. App.—Amarillo 1996, writ denied).
21.  
Striegler, 915 S.W.2d at 638; Powell v. Powell, 721 S.W.2d 394, 
396 (Tex. App.—Corpus Christi 1986, no writ).
22.  
See Tex. Fam. Code Ann. § 
154.066 (Vernon 2002); P.J.H., 25 S.W.3d at 405-06; Roosth v. Roosth, 
889 S.W.2d 445, 454 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  
Robert asserts that the evidence must also show that his initial reduction in 
income was voluntary.  We disagree.  While intentional underemployment 
requires a voluntary choice by the obligor, see In re D.S., 76 S.W.3d 
512, 520 (Tex. App.—Houston [14th Dist.] 2002, no pet.); Starck v. Nelson, 
878 S.W.2d 302, 307 (Tex. App.—Corpus Christi 1994, no writ), that can include 
the choice to either become or remain unemployed or underemployed.
        Further, 
the family code and some Texas courts do not require that the intentional 
unemployment or underemployment be for the purpose of decreasing child support 
payments.  See Tex. Fam. Code 
Ann. § 154.066; see also D.S., 76 S.W.3d at 520; In re S.B.C., 
952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no writ); Baucom v. Crews, 
819 S.W.2d 628, 633 (Tex. App.—Waco 1991, no writ).  Nonetheless, we will 
follow our own precedent, which imposes such a requirement, because it does not 
affect the disposition of this appeal.  See P.J.H., 25 S.W.3d at 
405-06.
23.  
Id.
24.  
Tex. Fam. Code Ann. § 154.066; Tenery 
v. Tenery, 955 S.W.2d 337, 340 (Tex. App.—San Antonio 1997, no pet.).
25.  
Although Robert disputes that the $39,870.89 in deposits in the concessions 
business’s account represent income, he did not provide the trial court any 
financial statements or other data for 2003 regarding that business.
26.  
See P.J.H., 25 S.W.3d at 405-06.
27.  
See Tex. R. Evid. 
801(e)(2)(B) (providing that statement of which party has manifested a belief in 
its truth is not hearsay).
28.  
Tex. R. Evid. 1006.
29.  
Robert’s other objections to exhibits 1, 3, and 4 are waived because they 
either were not raised in the trial court or are not briefed on appeal.  See 
Tex. R. App. P. 33.1(a), 38.1(h); Fredonia 
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994).
30.  
See Leithold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967); Lohmann v. 
Lohmann, 62 S.W.3d 875, 878-79 (Tex. App.—El Paso 2001, no pet.); Danburg 
v. Danburg, 444 S.W.2d 845, 848 (Tex. Civ. App.—Houston [14th Dist.] 1969, 
no writ).
31.  
See In re V.T., No. 2-03-248-CV, 2004 WL 1353024, at *1 (Tex. App.—Fort 
Worth Jun. 17, 2004, pet. denied) (mem. op.) (holding that pleading asking court 
to make proper orders for the support of the child and to modify conservators’ 
relative duties supported child support increase); Devine v. Devine, 490 
S.W.2d 246, 247 (Tex. Civ. App.—Tyler 1972, no writ); Danburg, 444 
S.W.2d at 848 (both holding that father’s pleadings seeking a reduction in 
child support authorized trial court to consider all issues pertaining to child 
support, including increasing support if necessary).
32.  
The cases on which Robert relies are inapposite because they did not involve 
family law matters.  See Horizon/CMS Healthcare Corp. v. Auld, 34 
S.W.3d 887 (Tex. 2000); Roark v. Allen, 633 S.W.2d 804 (Tex. 1982); RE/MAX 
of Tex., Inc. v. Katar Corp., 961 S.W.2d 324 (Tex. App.—Houston [1st 
Dist.] 1997), writ denied, 989 S.W.2d 363 (Tex. 1999).
33.  
Tex. Fam. Code Ann. § 106.002(a) 
(Vernon Supp. 2004-05); Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996).
34.  
London v. London, 94 S.W.3d 139, 146 (Tex. App.—Houston [14th Dist.] 
2002, no pet.).
35.  
Thomas v. Thomas, 895 S.W.2d 895, 898 (Tex. App.—Waco 1995, writ 
denied); Goudeau v. Marquez, 830 S.W.2d 681, 683 (Tex. App.—Houston 
[1st Dist.] 1992, no writ).
36.  
Nguyen Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d 144, 148 (Tex. 
App.—Houston [1st Dist.] 1986, no writ).
37.  
The motion for new trial, which was successful, pertained to a default judgment 
and is not at issue in this appeal.
38.  
See, e.g., Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 
(Tex. 1990) (holding that uncontroverted testimony regarding attorney’s fees 
may be taken as true as a matter of law where opposing party had means and 
opportunity of disproving same but failed to do so).