

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-195-CV**

IN THE INTEREST OF J.B., JR.,
S.C.B., AND S.F.B., MINOR CHILDREN

------------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In five issues, the Office of the Attorney General of Texas ("the OAG")
appeals the trial court's order overturning the portion of the 2004 agreed Child
Support Review Order ("CSRO") pertaining to S.C.B., and it further appeals the
trial court's order terminating the parent-child relationship between Appellee
J.B. and S.C.B.  We vacate in part and reverse and remand in part.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

In 2004, during the marriage of J.B. and ("Mother"), J.B. signed an admission of paternity acknowledging S.C.B. as his biological child. At the same time, he signed an agreed CSRO and a "Waiver of Service, Hearing, and Other Rights and Approval of Child Support Review Order." The trial court adjudicated J.B. the father of S.C.B.; neither post-trial motions nor a notice of appeal was filed.

In 2006, J.B. sought a divorce from Mother. In the petition, J.B. alleged that he was the father of S.C.B.; however, J.B. learned after filing the divorce petition that he was not S.C.B.'s biological father. In 2007, the OAG filed a petition to intervene in the divorce proceeding and moved to consolidate the divorce proceeding with the suit affecting the parent-child relationship ("SAPCR") in which the CSRO had been signed.[2]

Shortly thereafter, without informing the OAG, the trial court signed an agreed final decree of divorce. The decree contained a finding that S.C.B. "is not a child of this marriage" and established conservatorship and child support for J.B., Jr. and S.F.B.[3] Upon learning of the decree, the OAG timely filed a

---

[2] Through the intervention, the OAG sought to establish child support for S.C.B.

[3] J.B.'s biological children were provided for; however, S.C.B. was not.

motion for new trial. The trial court granted the OAG's motion for new trial but limited the issues to conservatorship, visitation, child support, and medical support for S.C.B.

In J.B.'s first amended original answer and counterclaim, he denied paternity of S.C.B. based on genetic test results and claimed fraud on the part of Mother. At the conclusion of the hearing, the trial court signed an order that overturned the CSRO with respect to S.C.B., terminated the parent-child relationship between J.B. and S.C.B., reinstated the agreed degree of divorce, and granted J.B. visitation rights to S.C.B. This appeal followed.

### III. Standard of Review

We review the trial court's grant or denial of a bill of review for an abuse of discretion, and every presumption is indulged in favor of the court's ruling. *Interaction, Inc. v. State*, 17 S.W.3d 775, 778 (Tex. App.—Austin 2000, pet. denied). We review the trial court's ruling on pleadings for an abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980). A trial court abuses its discretion if it misapplies the law to established facts. *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 347 (Tex. App.—Texarkana 1999, no pet.).

3

## IV. Child Support Review Oder

In its first issue, the OAG asserts that the trial court abused its discretion by overturning the CSRO. Specifically, the OAG argues that 1) the trial court lacked plenary jurisdiction to overturn the CSRO and that J.B.'s petition failed to meet the requirements of a bill of review, 2) the trial court's findings and conclusions as to the bill of review are legally and factually insufficient, and 3) J.B.'s pleadings do not support the trial court's order overturning the CSRO.[4]

Although paternity was not contested in the original proceeding, the 2004 SAPCR addressed S.C.B.'s paternity. The agreed CSRO establishes that J.B. is the father of S.C.B. and provides for S.C.B.'s medical care.[5] Generally, subject to several exceptions, a party to a court proceeding to determine parentage of a child is bound by the court's findings. Tex. Fam. Code Ann. § 160.637(a)(2) (Vernon 2008).

Although the 2004 order is an agreed order, and therefore is not based upon a fully contested trial on the merits, agreed orders are "accorded the same degree of finality and binding force as a final judgment rendered at the

---

[4] The OAG also claims that J.B.'s pleadings do not support the trial court's order terminating the parent-child relationship between J.B. and S.C.B.; however, we do not address that portion of the argument at this time.

[5] Because J.B. and Mother resided together at the time the CSRO was agreed to, it did not establish conservatorship, visitation, or child support.

conclusion of an adversary proceeding." *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979). While J.B. became obligated to support S.C.B. by virtue of the CSRO adjudicating paternity, Texas law does provide post-judgment avenues to contest a paternity finding. Section 160.637(e) of the Texas Family Code provides that "[a] party to an adjudication of paternity may challenge the adjudication only under the laws of this state relating to appeal, the vacating of judgments, or other judicial review." Tex. Fam. Code Ann. § 160.637(e).

Pursuant to rule 329b(d) of the Texas Rules of Civil Procedure, the trial court has plenary power for thirty days after a judgment is signed to grant a new trial or to vacate, modify, correct, or reform the judgment. Tex. R. Civ. P. 329b(d). Once the trial court's plenary power expires, it cannot set aside its judgment except by a bill of review for sufficient cause. Tex. R. Civ. P. 329b(f).

A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment that is no longer appealable or subject to a motion for new trial. *Id*.; *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985). To invoke the equitable power of the trial court, the party seeking a bill of review must file a petition alleging with particularity sworn facts sufficient to constitute a meritorious defense, which he was prevented from making by fraud, accident, or wrongful act of the opposing party or as the

5

result of official mistake, and unmixed with any fault or negligence of his own. *State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex. 1989).

In a petition for a bill of review, the petitioner must allege extrinsic fraud as distinguished from intrinsic fraud. *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989); *Nelson v. Chaney*, 193 S.W.3d 161, 165 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Failure to plead extrinsic fraud will result in denial of the right to a trial by bill of review. *See Tice*, 767 S.W.2d at 700; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003) (discussing extrinsic fraud), *cert. denied*, 541 U.S. 1030 (2004).

Extrinsic fraud is fraud that denies a party the opportunity to fully litigate at trial all the rights or defenses that he could have asserted. *Tice*, 767 S.W.2d at 702. Extrinsic fraud is wrongful conduct practiced outside of the adversary trial—such as keeping a party away from court, making false promises of compromise, denying a party knowledge of the suit—that affects the manner in which the judgment is procured. *Boaz v. Boaz*, 221 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "Extrinsic fraud is 'collateral' fraud in the sense that it must be collateral to the matter actually tried and not something which was actually or potentially in issue in the trial." *Montgomery v. Kennedy*, 669 S.W.2d 309, 312–13 (Tex. 1984) (citing *Crouch v. McGaw*, 134 Tex. 633, 138 S.W.2d 94, 97 (1940)).

6

In contrast, intrinsic fraud "relates to the merits of the issues which were presented and presumably were or should have been settled in the former action." *Tice*, 767 S.W.2d at 702. Intrinsic fraud "is inherent in the matter considered and determined in the trial 'where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein.'" *Montgomery*, 669 S.W.2d at 313 (quoting *Mills v. Baird*, 147 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1941, writ ref'd)).

J.B. does not allege extrinsic fraud in his petition.[6] J.B. alleges that Mother lied when she told J.B. that he was S.C.B.'s father, and that he did not learn until after the trial court had already adjudicated him S.C.B.'s father that he was not, in fact, S.C.B.'s biological father. Thus, the fraudulent statements that J.B. complains of were made by Mother, who was also a party to the SAPCR.

Because parentage was an issue subject to being fully litigated in the SAPCR, and the alleged fraud was that of a party to the suit, J.B.'s claim about Mother's misrepresentations of parentage asserts intrinsic fraud. *See, e.g., In re J.M.C.*, No. 04-06-00431-CV, 2007 WL 460691, *2 (Tex. App.—San

---

[6] Although there is a question as to whether J.B.'s petition was even filed as a bill of review, we assume for the sake of this argument that it was.

7

Antonio Feb. 14, 2007, no pet.) (mem. op.); *In re Attorney Gen. of Tex.*, 184 S.W.3d 925, 928 (Tex. App.—Beaumont 2006, no pet.); *Nelson*, 193 S.W.3d at 166.

To prove extrinsic fraud, J.B. had to present a prima facie case that Mother prevented him from having a fair opportunity to assert that he was not S.C.B.'s father when the parent-child relationship was established by the CSRO. *See Nelson*, 193 S.W.3d at 166. Furthermore, J.B. was put on notice by the very nature of the paternity proceeding that he could avail himself of the defense of non-paternity and that he could obtain a DNA test to support his defense. *Id.* Finally, J.B. failed to present sworn facts showing that Mother prevented him from availing himself of DNA testing at the time paternity was established.

Therefore, because J.B. did not meet the preliminary requirements for a bill of review proceeding—that is, he did not allege facts to show that: 1) the CSRO was rendered as the result of extrinsic fraud, and 2) the CSRO was rendered without the contribution of his own fault or neglect—we hold that the trial court abused its discretion in overturning that portion of the CSRO

8

pertaining to S.C.B. based upon the allegations in J.B.'s petition for a bill of review. Accordingly, we sustain the OAG's first issue.[7]

## V. Parent-Child Termination

In the OAG's fifth issue and as part of its third issue, the OAG asserts that the trial court abused its discretion by ordering the termination of the parent-child relationship between J.B. and S.C.B. Specifically, the OAG argues that 1) J.B.'s pleadings do not support the relief granted, 2) there is no evidence to support the trial court's finding that termination of the parent-child relationship is in the best interest of S.C.B., and 3) there is insufficient evidence to support the trial court's finding that termination of the parent-child relationship is in S.C.B.'s best interest.

Rule 301 of the Texas Rules of Civil Procedure provides that the judgment of a court must be supported by the pleadings. Tex. R. Civ. P. 301. The purpose of pleadings is to give an adversary notice of claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991).

---

[7] Because we determine that the trial court abused its discretion in overturning the CSRO, we need not address the OAG's second issue pertaining to the trial court's findings and conclusions as to the bill of review, or that portion of the OAG's third issue that pertains to J.B.'s pleadings regarding the CSRO. *See* Tex. R. App. P. 47.1.

9

The only pleadings filed by J.B. in this matter were his original petition for divorce and, in response to the OAG's motion for new trial, his first amended original answer and counterclaim. In the divorce petition, J.B. alleged that S.C.B. is a child of the marriage. Therefore, the divorce petition does not support the trial court's order to terminate the parent-child relationship between J.B. and S.C.B. The following are the pertinent sections of J.B.'s first amended original answer and counterclaim, paraphrased:

**"Denial of Paternity" (Paragraph 3):** J.B. alleged that he and Mother divorced on November 5, 2007, and that he and Mother had agreed in the divorce proceedings that J.B. was not S.C.B.'s biological father. J.B. admitted that S.C.B. was born during the marriage. J.B. also alleged that Mother "advised" him after the divorce petition had been filed that he was not S.C.B.'s biological father. Finally, J.B. "denied that he is the biological father" of S.C.B. and "assert[ed] that genetic testing was performed on [S.C.B.]" and excluded him as the biological father of S.C.B.

**"Counterclaim Against [Mother]" (Paragraph 4):** J.B. alleged that Mother committed fraud in that she knew J.B. was not S.C.B.'s biological father. J.B. alleged that Mother made representations to him during the marriage regarding S.C.B.'s paternity that were false and that Mother knew they were false at the time they were made. Finally, J.B. alleged that Mother made the false representations with the intent that J.B. rely on them, and that the false representations caused him injury for which he seeks damages.

**"Prayer" (Paragraph 6):** J.B. asked that all relief sought by petitioner as to S.C.B. be denied and that he "be granted all relief requested in this answer." J.B. requested damages from Mother on his fraud claim plus attorney's fees, expenses, and costs. Finally, he asked for general relief.

This pleading did not give fair notice to the OAG that J.B. was seeking to terminate his rights as a parent to S.C.B. It did not refer to a voluntary

10

termination, nor did it use words from which a reasonable person could infer that termination of the parent-child relationship is the basis of the petition. It alleged only that J.B. is not S.C.B.'s biological father and then asked that all relief sought by the OAG be denied. The OAG sought child support and medical expenses for S.C.B. Requesting relief from having to pay child support and medical expenses for S.C.B. did not provide fair notice to the OAG that J.B. was seeking to terminate his parental rights. *See Perez*, 809 S.W.2d at 218. J.B. argues, however, that even if termination was not pleaded, it was tried by consent.

When an issue not raised by the pleadings is tried by the express or implied consent of the parties, it is treated in all respects as if it had been raised in the pleadings. Tex. R. Civ. P. 67; *see Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). Trial by consent is intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue. *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997), *pet. denied*, 989 S.W.2d 363 (Tex. 1999); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied). It is not intended to establish a general rule of practice and should be applied with care. *RE/MAX of Tex.*, 961 S.W.2d at 328; *Stephanz*, 846 S.W.2d at 901. To determine whether an issue

11

was tried by consent, we must examine the record, not for evidence of the issue, but rather for evidence of trial of the issue. *Beck v. Walker*, 154 S.W.3d 895, 901 n.3 (Tex. App.—Dallas 2005, no pet.); *RE/MAX of Tex.*, 961 S.W.2d at 328; *Stephanz*, 846 S.W.2d at 901. An issue is tried by consent only when a party introduces evidence relevant to the unpleaded issue without objection. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g).

Here, the OAG objected on two separate occasions to the lack of pleadings to support termination.[8] *See id.* J.B. argues however that the OAG did not request a running objection and, as a result, relevant evidence was admitted without objection. However, because a single objection negates an implication of consent, it is not necessary to object to every offer of evidence relevant to the unpleaded issue to avoid trial by consent. *Harkey v. Tex. Employers' Ins. Ass'n*, 146 Tex. 504, 208 S.W.2d 919, 922 (1948). Therefore, since termination was not pleaded or tried by consent, it should not have been considered by the trial court and cannot be the basis for an order terminating J.B.'s parental rights to S.C.B. *See Perez*, 809 S.W.2d at 218; *Boyles*, 855 S.W.2d at 601. Accordingly, we sustain that portion of the OAG's

---

[8] At no time did J.B. request leave of the court to file a trial amendment, nor was a trial amendment filed in this cause.

12

third issue pertaining to J.B.'s pleadings and the trial court's order terminating the parent-child relationship between J.B. and S.C.B.

Furthermore, even if termination had been pleaded or tried by consent, J.B. failed to provide evidence that termination was in S.C.B.'s best interest. The Texas Family Code provides that a parent may file a petition requesting termination of the parent-child relationship with his child. Tex. Fam. Code Ann. § 161.005(a) (Vernon 2008). The court may order termination only if it is in the best interest of the child. *Id*.

The termination of parental rights involves fundamental constitutional rights and, therefore, the evidence supporting the termination must be clear and convincing. Tex. Fam. Code Ann. § 161.206(a); *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (Vernon 2008). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). While the proof must be of a heavier weight than merely the greater weight of the

13

credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570.

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

14

If we determine that no reasonable factfinder could form a firm belief or conviction that the grounds for termination were proven, then the evidence is legally insufficient, and we must generally render judgment upholding the parent-child relationship. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see* Tex. R. App. P. 43.3.

During trial, J.B. offered the following evidence to support his argument that terminating his parental rights to S.C.B. is in S.C.B.'s best interest. First, J.B. testified that he and Mother had an agreed decree of divorce that did not include S.C.B. Second, J.B. testified to the following:

> Q: Do you think it's in the best interest of [S.C.B.] that you be allowed to terminate as to [S.C.B.]?
>
> A: Yes.
>
> Q: Why is that? Explain that to the Court.
>
> A. I am not responsible for him financially.
>
> Q. What else?
>
> A. I mean, he ought to – he ought to know the truth, you know eventually.

Third, J.B. testified that he should not be responsible for S.C.B. financially, but rather S.C.B.'s biological father should be the one to financially support S.C.B.

However, the trial court also heard the following undisputed evidence during trial. J.B. is the only father that S.C.B. has ever known. S.C.B. calls

15

J.B. "Daddy." J.B. has a good relationship with S.C.B. J.B. and Mother have agreed never to tell S.C.B. about his biological father. J.B. has agreed to raise S.C.B. like his own son. J.B. wants to continue his relationship with S.C.B. Mother is a single mom who makes $6.50 per hour. J.B. earned $87,353 in the year before the hearing. S.C.B. was on Medicaid at the time of the hearing, but it was set to expire at the end of the month. Mother does not have health insurance through her employment. J.B. has health insurance through his employment that will cover his children.

We are to review the evidence to determine whether termination is in S.C.B.'s best interest. Tex. Fam. Code Ann. § 161.005(a). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

Given all the evidence, J.B.'s testimony that he is not financially responsible for S.C.B. and that S.C.B. should eventually know the truth about his biological father is insufficient to support a finding that termination is in S.C.B.'s best interest. *See Dockery v. State*, No. 03-05-00713-CV, 2006 WL 3329794, at *1 (Tex. App.—Austin Nov. 14, 2006, pet. denied) (mem. op.); *see also In re T.S.S.*, 61 S.W.3d 481, 488 (Tex. App.—San Antonio 2001, pet. denied); *Nichols v. Nichols*, 803 S.W.2d 484, 485 (Tex. App.—El Paso 1991, no writ); *Linan v. Linan*, 632 S.W.2d 155, 156 (Tex. App.—Corpus Christi

16

1982, no writ). Therefore, we hold that the evidence is legally insufficient to support the trial court's order to terminate the parent-child relationship between J.B. and S.C.B. Accordingly, we sustain the OAG's fifth issue.[9]

## VI. Conclusion

Having sustained or otherwise disposed of all five of the OAG's issues, we vacate the trial court's order overturning the CSRO and terminating the parent-child relationship between J.B. and S.C.B., we reverse the trial court's order reinstating the provisions of the agreed final decree of divorce that pertain to S.C.B., and we remand this case to the trial court solely for the determination of all medical support, child support, conservatorship, possession, and access issues regarding S.C.B.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: February 26, 2009

---

[9] Because we determine that the evidence is legally insufficient to support the trial court's order to terminate the parent-child relationship between J.B. and S.C.B., we need not address the OAG's fourth issue pertaining to factual sufficiency. *See* Tex. R. App. P. 47.1.

17