**Affirmed in Part and Reversed in Part and Opinion filed April 27, 2023.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-21-00451-CV

**DERRICK FONTENOT, Appellant**

**V.**

**JANELL FONTENOT, Appellee**

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2021-22098**

## OPINION

Appellant Derrick Fontenot ("Derrick") appeals a protective order entered in favor of Janell Fontenot ("Janell") and Derrick and Janell's child, N.F.[1] In six issues we have reorganized, Derrick argues: (1) the trial court erred when it granted relief not requested in Janell's live pleading; (2) the district court lacked subject-matter

---

[1] We use initials to protect the minor's identity. *See* Tex. R. App. P. 9.8 cmt; *Dolgener v. Dolgener*, 651 S.W.3d 242, 247 n.3 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also* Tex. Fam. Code Ann. § 109.002(d). At the time of the final hearing, N.F. was one year old.

jurisdiction in this case; (3) the trial court denied him due process of law; (4) there was legally and factually insufficient evidence to support the protective order for N.F.; (5) there was legally and factually insufficient evidence of a danger of future violence; and (6) there was legally and factually insufficient evidence to support a protective order for a period longer than two years. We reverse in part the trial court's order to the extent it protects Janell because Janell's pleading did not request such relief and the issue was not tried by consent. We affirm in part the remainder of the trial court's order as challenged on appeal.

## I.  BACKGROUND

On April 14, 2021, Janell filed an application for a protective order for the benefit of N.F. in the 280th District Court of Harris County, Texas. Janell amended her application twice, and in her live pleading, alleged that Derrick had engaged in conduct that constitutes family violence against N.F. and that good cause exists to prohibit Derrick from communicating with N.F. except through Derrick's attorney or a person appointed by the court. Janell further alleged that Derrick committed an act constituting a felony offense involving family violence against Janell and N.F. and that Derrick caused serious bodily injury to Janell and N.F.; based on these allegations Janell requested that the protective order exceed a two-year term. In her second amended petition, Janell noted for the first time that a suit for the dissolution of  Janell and Derrick's marriage was pending in the 246th District Court of Harris County. Janell's live pleading requested a protective order for N.F., defining the "protected person" sought under the protective order only as N.F.

Derrick filed a plea to the jurisdiction, arguing that the trial court lacked jurisdiction because divorce proceedings were pending in the 246th District Court when Janell filed her application for a protective order in the 280th District Court. The trial court denied Derrick's plea.

On June 7, 2021, the 280th court held a final hearing on Janell's petition for a protective order. At the final hearing, the trial court received testimony from Janell, Corey Bruno, April Sandoval, Jonathan Swanson, Martha Torres, Eric Trumbetta, Joshua Barrese, Brian Mainor, and Andrew Bailey.[2]

## A. FINAL HEARING

### 1. Janell

Janell testified that she was seeking a protective order for herself and N.F., that she and Derrick began dating in 2017 and married in February of 2019, that Derrick was physically and emotionally abusive towards her during their relationship, and that they separated in October 2020. Janell testified of instances of violence concerning Derrick occurring on different dates. Janell also testified that she was concerned that family violence was likely to occur again in the future.

#### a. December 14, 2020

According to Janell, on the morning of December 14, 2020, she told Derrick that she needed space and asked him to leave her residence. Janell testified that during the conversation that followed, Derrick "attacked me and grabbed me by the arms," "shook me . . . vigorously," and eventually "threw me against the couch after I told him he was hurting me." After Janell continued to ask Derrick to leave, Derrick choked her for "about a half a second or so," during which Janell's breathing was restricted.

Janell explained that Derrick was supposed to take N.F. to daycare that day. Janell asked Derrick multiple times to take N.F. and leave. Eventually, Derrick picked up N.F., and Janell believed Derrick was getting ready to go, when they started talking and arguing. According to Janell, Derrick then pulled her in closer

---

[2] Bailey was Janell's lawyer in the trial court. Bailey testified regarding his attorney's fees.

and bit her in the forehead. After Janell broke free from Derrick, Derrick threw Janell "on top of the baby gate that was near upstairs," while holding N.F. with the other hand. After Derrick made his way outside with N.F., Janell followed them. Janell asked Derrick to give N.F. back to her "for a second" and reached out for N.F., at which point Derrick attempted to slap Janell but instead slapped N.F. in the face. When Janell realized Derrick had struck N.F., she hit Derrick and Derrick slapped Janell across the face. Derrick then placed N.F. in the vehicle and Janell started "clawing at his hands to get his hand off the seat belt buckle," at which point Derrick began to strangle Janell. Janell testified Derrick strangled her "a while," for "[p]robably two, three seconds." Janell stated she had cuts and swelling from the strangulation resulting from the altercation with Derrick.

Janell introduced into the record a criminal charge filed against Derrick by her for assault of a family member by impeding her breathing, listing the date of the offense as December 14, 2020. She also introduced text messages exchanged between herself and Derrick on December 16 and 17 of 2020. In the text messages, Janell and Derrick discuss the incident where Derrick accidentally struck N.F. and Janell also mentions that Derrick choked her that day.

        b.      August 2020

Janell testified that she and Derrick left a friend's house in Derrick's car, and that Derrick was really drunk and rude. Janell stated that she asked Derrick to let her out of the car, which he eventually did, but Janell left her wallet behind in the vehicle. Shortly after, Derrick pulled the car over on the side of Texas State Highway 288. Janell walked towards the car and threw her phone at Derrick, which struck him in the face and "kind of grazed his ear and it cut him." According to Janell, Derrick then attacked her by pounding, stomping, and kicking her and said he was going to kill her.

### c. Other Instances of Violence

Janell also testified that there was other abuse, with the first instance occurring when she was pregnant, and abusive conduct occurring "maybe like once a month." Janell testified that she felt that Derrick was not in control of his anger "[a] lot of the times" and that Derrick would "admit to what he's done and then we'll go back to it again."

Janell testified to other instances of violence when she was physically attacked by Derrick, including once when she was nursing N.F. and he pushed both Janell and N.F. during an argument, and on another occasion, five days after N.F. was born, when Derrick pushed her and "wanted to wrestle and fight" Janell for N.F.'s onesie, then took the onesie from her and slapped her across the face with it. Janell also testified that in November of 2018 Derrick sexually assaulted her once at a Thanksgiving party in 2018 by having her perform oral sex on him against her will but that she did not report it.

### 2. Bruno

Deputy Bruno is the custodian of records for Harris County Constable's Office Precinct 2. She testified concerning the records of calls for service made to the precinct related to Janell and Derrick.[3] Bruno testified that the records showed that calls were made on December 13, 2020; two calls for service on December 21, 2020; January 4, 2021; and January 13, 2021.

### 3. Sandoval

Deputy Sandoval of the Harris County Constable's Office Precinct 2 testified that she responded to a call to Janell and Derrick's home on December 13, 2020,

---

[3] While the call records were admitted into evidence by the trial court, they do not appear in the record on appeal because they were not given to the court reporter.

after their neighbors reported a disturbance. Sandoval testified she did not witness any signs of violence on that night, and when asked about violence on that night and in the past, Janell told Sandoval there was no violence that evening and answered "no" to whether there had been violence in the past. Sandoval testified she did not speak with Derrick that evening but that another deputy did, and that deputy would have more knowledge about what happened.

### 4.    Swanson

Swanson is Derrick's best friend. Swanson testified that in 2020 Derrick called Swanson and asked him to meet him on the side of Highway 288. Swanson testified that, prior to the telephone call, Derrick and Janell had been at his home playing cards with Swanson and his girlfriend, Dominique Smith. According to Swanson, Derrick told him on the phone that Janell was "putting her hands on him and harassing him" during Janell and Derrick's drive home. Swanson drove to Janell and Derrick's location and witnessed Janell "beating on" Derrick, punching him in his head, his face, the back of his neck, and his eardrum, causing Derrick to suffer a busted eardrum. Derrick introduced photos from that evening showing him bleeding from his earlobe near an earring. Swanson further stated that Janell did not appear to have been physically assaulted and that he witnessed Janell "taking all of [Derrick's] belongings, his phone [and] throwing it everywhere."

### 5.    Torres

Deputy Torres of the Harris County Constable's Office Precinct 2 spoke with Janell on or about January 7, 2021, regarding Janell's desire to file for a protective order against Derrick and Janell's allegations about an incident which took place on December 14, 2020. Torres met with Janell about the December 14, 2020, incident on January 8, but did not notice any injuries on Janell, and testified she would have

noted any injuries in the report.[4] Torres testified that Derrick told her Janell's allegations were false and that she initially believed Derrick; however, Torres no longer believed Derrick after reading text messages between Derrick and Janell.

### 6. Trumbetta

Trumbetta met Derrick while they both served in the military. He testified regarding the Thanksgiving party in November of 2018 attended by Derrick and Janell. According to Trumbetta, he was with Derrick for the entire time during the party and did not recall Derrick making any sexual advances to Janell or doing anything sexually improper, but that he left the party prior to Derrick and did not know what might have happened after he left. Trumbetta also testified that he did not go into the bathroom with Derrick, or witness Derrick go into the bathroom with Janell, and that Derrick suffered an injury to his eardrum while in the military.

### 7. Barrese

Barrese also served with Derrick in the military and lived with Janell and Derrick for a period of time while they were stationed in Anchorage, Alaska. Barrese testified that he picked up Janell and Derrick from a Thanksgiving party in November 2018 and drove them home because Janell and Derrick were unable to drive. Barrese did not witness any evidence that Derrick had sexually assaulted Janell and denied he made comments suggesting that Derrick had done so. Barrese also did not witness any anger, yelling, or any sign of an argument or wrongdoing. Barrese testified Janell was intoxicated and vomited in the car. According to Barrese, Derrick asked him to testify in Derrick's defense because Janell alleged that Derrick raped her the evening of the Thanksgiving party.

---

[4] Officer Torres testified she first spoke with Janell over the phone on January 4, 2021, regarding Janell's desire to file for a protective order against Derrick. Officer Torres told Janell that she would not be able to do that at that time because Janell was out of the country.

### 8. Mainor

Mainor also served with Derrick in the military and was also present at the 2018 Thanksgiving party. Mainor testified Janell became intoxicated, felt sick, and vomited in the bathroom. According to Mainor, "Font" and "Jacob Savage" assisted Janell to the bathroom. Mainor did not witness or believe that a sexual assault had taken place, but acknowledged that Janell was in another room on the second floor while he was not on the second floor, and that Janell was also in the restroom when he was not in the restroom.

## B. TRIAL COURT'S RULING

On June 16, 2021, the trial court entered a protective order protecting both N.F. and Janell, finding that family violence had occurred, that it is likely to occur in the future, and that Derrick committed an offense constituting a felony offense involving family violence against Janell. *See* Tex. Fam. Code Ann. § 85.001. The trial court's order provides that it is in effect as to Janell for twenty-five years and as to N.F. until N.F. reaches eighteen years of age. The trial court's order further ordered Derrick to attend counseling and undergo a psychological evaluation. On September 26, 2021, Derrick filed an amended motion to transfer the protective order to the court where the divorce was filed and to vacate the judgment.[5] This appeal followed.

---

[5] Derrick requested findings of fact and conclusions of law, but he did not file a motion for new trial or other motion challenging the trial court's June 16, 2021 judgment. The trial court's plenary power expired on July 16, 2021. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000) ("A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment."); *In re Gillespie*, 124 S.W.3d 699, 703–04 (Tex. App.— Houston [14th Dist.] 2003, orig. proceeding) (en banc) (holding that a request for findings of fact and conclusions of law extends the deadline for the filing of a notice of appeal but not the trial court's plenary power); *see* Tex. R. Civ. P. 329b. Derrick filed his motion to vacate judgment on September 27, 2021, after the trials court's plenary power expired.  Thus, the trial court did not have plenary power when Derrick filed his motion to vacate, rendering Derrick's motion moot.

## II. REQUESTED RELIEF

In his first issue, Derrick argues that the trial court erred in granting a protective order in favor of Janell because Janell's live pleading did not request that Janell be a protected person under the order. Janell argues that her pleading requested this relief and, in the alternative, that the issue was tried by consent. Derrick argues that the trial court also granted relief that was not requested by Janell when it ordered Derrick to attend counseling and undergo a psychological evaluation. Finally, Derrick argues the trial court erred in granting attorney's fees for Andrew Bailey when Janell requested attorney's fees be awarded to Yalda Bayley.

### A. APPLICABLE LAW & STANDARD OF REVIEW

The Family Code provides that in instances of family violence "by a member of a family or household against another member of the family or household," "an adult member of the family or household may file an application for a protective order to protect the applicant or any other member of the applicant's family or household." *See* Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a).

Under Texas Rule of Civil Procedure 301, a trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301. Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex. 1995). As a reviewing court, we are to liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon,* 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The petition must give fair and adequate notice of the claims being asserted, and if we cannot reasonably infer that the petition

contains a given claim, then we must conclude the petition does not contain the claim. *See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55.

Unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *see* Tex. R. Civ. P. 67. Trial by consent "can cure lack of pleading, but an issue is not tried by consent merely because evidence regarding it is admitted." *Bos v. Smith*, 556 S.W.3d 293, 306–07 (Tex. 2018). To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Id.* at 307. A party consents to trial of an unpleaded issue when evidence on the issue is developed under circumstances indicating that both parties understood what the issue was in the case, and the other party failed to make an appropriate complaint. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."). If a party allows an issue to be tried by consent and does not raise the lack of pleading before submission of the case, then the party may not raise the pleading deficiency for the first time on appeal. *In re I.A.B.N.*, No. 01-22-00306-CV, 2022 WL 4540813, at *4–5 (Tex. App.—Houston [1st Dist.] Sept. 29, 2022, no pet.) (mem. op.).

"Trial by consent is intended only in the exceptional case where the record clearly reflects the parties' trial of an issue by consent." *See Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.). An issue is not tried by consent if the evidence presented on that issue is also relevant to other issues raised by the pleadings. *King v. Lyons*, 457 S.W.3d 122, 127 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The trial-by-consent doctrine is "not intended to establish

a general rule of practice," and it "should be applied with care." *Guillory*, 442 S.W.3d at 690. Thus, the doctrine should not be applied in a "doubtful situation." *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

**B.  PROTECTIVE ORDER FOR JANELL**

The protective order granted by the trial court states "In this order, 'Protected Person' means [Janell], and [N.F.]," and thus, protects both N.F. and Janell, the applicant.

The Family Code does not provide that "the applicant" for a protective order under the Family Code *automatically* seeks a protective order on his or her behalf by filing for a protective order. *Cf.* Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a).

Here, Janell's live pleading stated:

This Application for a Protective Order is brought by Janell Fontenot, Applicant, who is a resident of Harris County, Texas. This Application for a Protective Order is brought for the protection of [N.F.], who is a resident of Harris County, Texas.

. . .

Applicant is the spouse of Respondent, and a copy of the decree dissolving the marriage is unavailable to Applicant at this time.

The child, [N.F.], for whom a protective order is sought is not subject to the continuing jurisdiction of any court.

Applicant and Respondent had a dating relationship as defined in section 71.0021(b) of the Texas Family Code.

. . .

*7. Request for Protective Order*

In this application, "Protected Person" means [N.F.]

Applying the fair-notice pleading standard, we conclude that Janell's pleading only requested a protective order for N.F. and did not request a protective order for

11

Janell. *See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55.

Janell also argues that the issue was tried by consent. At the final hearing, the following colloquy occurred after Janell testified that she was requesting a protective order on her behalf against Derrick:

| | |
|---|---|
| [Derrick's counsel]: | Very quickly. The pro -- the application is clearly requesting protection for [N.F.]. Only -- |
| [Janell's counsel]: | Yes. |
| [Trial Court]: | I'm sorry, sir? |
| [Derrick's counsel]: | I think we're on the same page. The protection was protection order -- for [N.F.]. I just wanted to make sure I was right about that. |
| [Janell's counsel]: | The protective order is a request for [Janell] -- for [Janell] and her young child. |
| [Derrick's counsel]: | It doesn't say that, Judge. It clearly says -- |
| [Janell's counsel]: | It does. |
| [Derrick's counsel]: | It says the protective order is not for the protection of [N.F.] |
| [Janell's counsel]: | It does not. Let me pull up the pleading. |
| [Trial Court]: | It says the application for a protective order is brought by Janell Fontenot, applicant, who is the resident of Harris County. This application for a protective order is brought for the protection of [N.F.] who is a resident of Harris County. Okay. So she is the applicant, so she is requesting the protective order, not only for herself, but also for the child as the applicant. |

12

| | |
|---|---|
| [Derrick's counsel]: | We'd request a trial amendment for the record, Judge. |
| [Janell's counsel]: | It's elsewhere in the pleading that we're asking for this. |
| [Trial Court]: | Go ahead, please. |
| [Janell's counsel]: | Thank you. |

We conclude that the issue was not tried by consent because Janell's pleading requested a protective order on behalf of N.F. only, and not on behalf of Janell, and note that Derrick complained of the pleading deficiency to the trial court. *See* Tex. R. App. P. 33.1; *Ingram*, 288 S.W.3d at 893; *Guillory*, 442 S.W.3d at 690; *see also Moran v. Williamson*, 498 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (noting that "no special language is required to present an objection to a trial court").

Pleadings must give fair notice of the nature and basic issues so the opposing party can prepare a defense. *Bos*, 556 S.W.3d at 305–06. Although we liberally construe the pleadings in the pleader's favor when no special exception is made, a liberal construction "does not require a court to read into a petition what is plainly not there." *Id.* at 306. Derrick is entitled to rely on Janell's pleading, and without reference to Janell seeking an order as a protected person, Derrick had no reason to allege the pleading was defective and specially except. Janell argues the same evidence admitted supporting the entry of a protective order as to N.F. also supports the entry of an order protecting Janell. *See* Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a); *Bos*, 556 S.W.3d at 306–07; *Dolgener*, 651 S.W.3d at 259–60. However, the record does not demonstrate that the issue concerning an order protecting Janell was tried by consent because the record does not indicate that both parties understood that was an issue in the case. *See Bos*, 556 S.W.3d at 306–07. "The doctrine of trial by consent does not apply when the evidence of an unpleaded matter

is relevant to the pleaded issues because it would not be calculated to elicit an objection." *Id.* Finally, while it was Janell's burden to request a trial amendment and instead Derrick made the request, Derrick's request for a trial amendment was in essence an objection to the unpleaded relief requested. *See RE/MAX of Tex., Inc.*, 961 S.W.2d at 328 (noting that the doctrine of trial by consent should not be applied in a "doubtful situation"). Because Janell did not plead for this relief and the issue was not tried by consent, we conclude that the trial court erred when it entered a protective order in regard to Janell.

## C. ATTORNEY'S FEES & RELIEF IN ORDER

Derrick also argues that the trial court granted Janell unpleaded relief when it: (1) ordered Derrick to attend counseling and undergo a psychological evaluation, and (2) granted attorney fees for Andrew Bailey when Janell requested attorney's fees be awarded to Yalda Bayley.

To preserve an issue for appellate review, a party must make its complaint known to the trial court by a timely request or objection that is specific enough for the trial court to be aware of the complaint and then obtain a ruling from the court. *See* Tex. R. App. P. 33.1(a). Here, Derrick did not raise in the trial court his complaint concerning the award of attorney's fees to Andrew Baily nor his complaint regarding the provisions in the trial court's protective order concerning counseling and a psychological evaluation. Thus, these arguments were not preserved for our review. *See id.*; *see, e.g.*, *Ennadi v. Ennadi*, No. 01-21-00252-CV, 2023 WL 105109, *7 (Tex. App.—Houston [1st Dist.] Jan. 5, 2023, no pet. h.) (mem. op.) (collecting cases and concluding that argument was not preserved on appeal when appellant "did not complain in the trial court that its findings did not conform with the pleadings, and [appellant] did not ask the trial court to modify its final protective order on the ground that the relief granted in the protective order had not

14

been pled").

**D. SUMMARY**

We sustain Derrick's first issue in part, concluding that the trial court erred when it entered a protective order in favor of Janell because Janell did not request that relief in her live pleading. We overrule the remainder of Derrick's first issue.

## III. SUBJECT-MATTER JURISDICTION

Relying on Family Code § 85.062, Derrick argues in his second issue that the final protective order is void because the trial court lacked subject-matter jurisdiction.

**A. STANDARD OF REVIEW & APPLICABLE LAW**

"[S]ubject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Consequently, a court cannot render a binding judgment concerning matters over which it lacks subject-matter jurisdiction. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 309 (Tex. 2010) (orig. proceeding). For these reasons, subject-matter jurisdiction cannot be waived by the parties. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Determining whether a trial court had subject-matter jurisdiction is a question of law we review de novo. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam).

Family Code § 85.062 provides:

(a) If a suit for dissolution of a marriage or suit affecting the parent-child relationship is pending, a party to the suit may apply for a protective order against another party to the suit by filing an application:

> (1) in the court in which the suit is pending; or

> (2) in a court in the county in which the applicant resides if the

15

applicant resides outside the jurisdiction of the court in which the suit is pending.

(b) An applicant subject to this section shall inform the clerk of the court that renders a protective order that a suit for dissolution of a marriage or a suit affecting the parent-child relationship is pending in which the applicant is party.

(c) If a final protective order is rendered by a court other than the court in which a suit for dissolution of a marriage or a suit affecting the parent-child relationship is pending, the clerk of the court that rendered the protective order shall:

(1) inform the clerk of the court in which the suit is pending that a final protective order has been rendered; and

(2) forward a copy of the final protective order to the court in which the suit is pending.

(d) A protective order rendered by a court in which an application is filed under Subsection (a)(2) is subject to transfer under Section 85.064.

Tex. Fam. Code Ann. § 85.062.

## B.    ANALYSIS

Contrary to Derrick's argument, we have previously analyzed the statutory scheme and concluded that the filing requirement in Family Code § 85.062 is not jurisdictional. *Phillips v. Phillips*, 651 S.W.3d 112, 117 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Additionally, Derrick's argument that Janell filed her application in the wrong court is not a matter of fundamental error. *See id.* Instead, Derrick's argument is more properly characterized as an issue of dominant jurisdiction[6] or venue, which Derrick does not raise on appeal. *See* Tex. R. App. P.

---

[6] Despite its name, the doctrine of dominant jurisdiction is not jurisdictional. *Phillips v. Phillips*, 651 S.W.3d 112, 119 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Dominant jurisdiction applies when venue is proper in two or more Texas counties or courts. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *see also In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding) (when jurisdiction of two courts is concurrent, issue is one of dominant jurisdiction); *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (applying ripeness doctrine to resolve issue of four competing venues). Dominant jurisdiction recognizes "the plaintiff's privilege to choose the forum" and accepts that choice as correct, provided "the forum

33.1; *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988) (noting that court in which suit is first filed acquires dominant jurisdiction), *disagreed with on other grounds by In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287 (Tex. 2016) (orig. proceeding); *Gordon v. Jones*, 196 S.W.3d 376, 382–83 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting that doctrine of dominant jurisdiction pertains to venue, not subject-matter jurisdiction); *see, e.g.*, *Phillips*, 651 S.W.3d at 118–19. Additionally, Derrick never timely challenged venue or dominant jurisdiction in the trial court. *See Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 826 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that dominant jurisdiction may be waived if not timely asserted); Tex. R. Civ. P. 86 ("An objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading or motion").[7]

We overrule Derrick's second issue.

## IV.    DUE PROCESS

In his third issue, Derrick argues the trial court violated his due process rights

---

is a proper one." *Gonzalez*, 159 S.W.3d at 622. Thus, "the court in which suit is first filed generally acquires dominant jurisdiction to the exclusion of other courts if venue is proper in the county in which suit was first filed." *Id.* (citing *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988)).

[7] If a protective order was rendered while a suit for dissolution of marriage is pending as provided by § 85.062, then the court that rendered the order may, on the motion of a party or on the court's own motion, transfer the protective order to the court having jurisdiction of the suit if the court makes the finding prescribed by § 85.064(c). *Dolgener*, 651 S.W.3d at 268 (citing Tex. Fam. Code Ann. § 85.064(a)). A court may transfer a protective order under § 85.064(a) if the court finds that the transfer is: (1) in the interest of justice, or (2) for the safety and convenience of a party or witness. *Id.* (citing Tex. Fam. Code Ann. § 85.064(c)). The provision is not mandatory. *Id.*; *see* Tex. Fam. Code Ann. § 85.064(a). "A protective order that is transferred is subject to modification by the court that receives the order to the same extent modification is permitted under Chapter 87 [of the Family Code] by a court that rendered the order." Tex. Fam. Code Ann. § 85.065(c).

17

by terminating his parental rights to N.F.,[8] not following the Texas Rules of Evidence, limiting each side's presentation of evidence to one hour and fifteen minutes, and not allowing testimony from two of Derrick's witnesses.

## A.   APPLICABLE LAW & STANDARD OF REVIEW

Article I, section 19, of the Texas Constitution provides that "[n]o citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. Due process affords litigants the right to be heard. *Joseph v. Jack*, 624 S.W.3d 1, 11–12 (Tex. App.—Houston [1st Dist.] 2021, no pet.). The opportunity to be heard must amount to more than mere cross-examination of the adverse party's witnesses. *Brown v. Brown*, No. 01-20-00365-CV, 2021 WL 3204751, at *3 (Tex. App.—Houston [1st Dist.] July 29, 2021, pet. denied) (mem. op.). "[F]undamental fairness dictates that a party not be arbitrarily deprived of the right to offer evidence." *Id.*

### 1.   Length of Trial

The trial court has great discretion in the conduct of the trial. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). A trial court's "inherent power" and the applicable rules of procedure and evidence accord judges broad, but not unfettered, discretion in handling trials. *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [14th Dist.] 1997, writ denied). A trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Francis*, 46 S.W.3d at 241; *Hoggett v. Brown*, 971

---

[8] Derrick argues on appeal that due process rights were implicated because, in essence, the trial court terminated his parental rights. Derrick does not argue that it was a due-process violation to terminate his parental rights, nor did he raise this argument in the trial court. *See* Tex. R. App. P. 33.1(a).

S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (noting that trial court has inherent power to control disposition of cases "with economy of time and effort for itself, for counsel, and for litigants").

We review the trial court's imposition of limits on the parties' presentation of evidence for an abuse of discretion. *See Francis*, 46 S.W.3d at 240–41; *State v. Reina*, 218 S.W.3d 247, 250 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also* Tex. R Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."). A trial court does not abuse its discretion unless it acts in an arbitrary and unreasonable manner. *Reina*, 218 S.W.3d at 250. We review de novo a claim that a party was deprived of a constitutional right because it presents an issue of law. *Joseph*, 624 S.W.3d at 11.

Here, Derrick did not object to the imposition of the time limit based on a due-process violation. *See* Tex. R. App. 33.1(a). Instead, Derrick stated "[i]f I think I need more time, I'll make the objection, Judge, is all I'm saying." Thus, this argument was not preserved for our review. *See id.*; *see, e.g.*, *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003).

### 2.    Rules of Evidence

Derrick argues his due process rights were violated because the trial court: overruled his hearsay objections to the introduction of text messages between Janell and Derrick; excluded evidence of a settlement agreement between Janell and Derrick;[9] and excluded testimony of Derrick's peaceful character. However, Derrick

---

[9] In the divorce proceedings in the 246th District Court, Janell and Derrick entered a mediated settlement agreement regarding the temporary orders to be entered by the 246th court.

did not object to these rulings on due-process grounds. *See* Tex. R. App. 33.1(a); Accordingly, these arguments have not been preserved for our review. *See id.*; *In re L.M.I.*, 119 S.W.3d at 710–11.

### 3. Access to the Record

In Derrick's appellate brief, he notes that he raised a due-process objection to the trial court's refusal to allow him to review Janell's application for a protective order and the filings in the clerk's record. However, other than noting this in his brief, Derrick provides no substantive discussion or citation to authority explaining why this decision by the trial court violated his due process rights. *See* Tex. R. App. P. 38.1(i).

In his brief, Derrick argues that he "had notice of the hearing date and had been served with the First and Second Amended petitions," with the second amended petition being Janell's live pleading. Derrick argues that "he did not have notice concerning the circumstances around the original petition, which mislead the trial district clerk into filing the case in the wrong court" because the original protective order claimed that N.F. was not under the continuing jurisdiction of any court. However, as previously concluded, the trial court had jurisdiction over Janell's application for a protective order, including an application seeking to protect N.F. *See Pruneda v. Granados*, No. 01-20-00043-CV, 2021 WL 2231267, at *11 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.) (op. on reh'g) ("That a court of continuing, exclusive jurisdiction exists under Texas Family Code Section 155.001(a) does not deprive another court, of competent jurisdiction, of jurisdiction over a related protective order."). Finally, Derrick does not advance any other

---

The 246th court then entered temporary orders according to the parties' agreement. *See* Tex. Fam. Code Ann. § 153.0071(a), (e); *see also In re Lee*, 411 S.W.3d 445, 451–55 (Tex. 2013) (orig. proceeding).

argument explaining how his inability to access Janell's original petition caused him harm. *See* Tex. R. App. P. 44.1(a).

We reject Derrick's argument that his due-process rights were violated because the trial court did not allow him access to the contents of the clerk's record, including Janell's original application for a protective order.

### 4. Exclusion of Testimony

Here, the trial court did not permit Smith to testify because the court found that it was highly likely that the Rule had been violated.

In Texas, sequestration in civil litigation is governed by Texas Rule of Evidence 614 and Texas Rule of Civil Procedure 267. *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116 (Tex. 1999). These rules provide that, at the request of any party, the witnesses on both sides shall be removed from the courtroom to some place where they cannot hear the testimony delivered by any other witness in the cause. Tex. R. Civ. P. 267(a); Tex. R. Evid. 614. Once the Rule is invoked, all nonexempt witnesses must be placed under the Rule and excluded from the courtroom. *Drilex Sys.*, 1 S.W.3d at 117. A violation of the Rule occurs when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in the case or by reading reports or comments about the testimony. *Id.* When the Rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. *Id.*

Derrick sought to elicit testimony from Smith showing that Janell was the aggressor in the August 2020 incident and that Janell was untruthful about her injuries that day. Assuming, without deciding, that the trial court erred when it

21

excluded the testimony of Smith, we conclude that any such alleged error was harmless because there was undisputed evidence at trial that Derrick physically assaulted Janell in other instances apart from the August 2020 incident. *See* Tex. R. App. P. 44.1(a). Additionally, Swanson testified that he witnessed Janell striking Derrick, as opposed to Janell's allegations that Derrick was striking her. Because the testimony of Smith would have been duplicative of Swanson's testimony regarding the August 2020 incident, the evidence sought to be introduced through Smith would have been duplicative; thus, any error in excluding Smith's testimony is harmless. *See id.*

Derrick also argues on appeal that the trial court violated his due-process rights because it did not allow Derrick's father to testify. However, Derrick did not assert a due-process objection when the trial court excluded his father's testimony. Accordingly, this argument has not been preserved for our review. *See* Tex. R. App. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d at 710–11.

We overrule Derrick's third issue.

## V.   EVIDENTIARY SUFFICIENCY

In his fourth issue, Derrick argues the evidence was legally and factually insufficient to support the protective order in favor of N.F. In his fourth issue, Derrick argues the evidence was legally and factually insufficient to support the trial court's finding of future violence. In his fifth issue, Derrick argues the evidence was legally and factually insufficient to support the protective order for a period longer than two years.

### A.   APPLICABLE LAW

"A court shall render a protective order as provided by [§] 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future."

Tex. Fam. Code Ann. § 81.001; *see id.* § 85.001(a) ("At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future."). The Family Code further provides that, in instances of family violence by a member of a family or household against another member of the family or household, an adult member of the family or household may file an application for a protective order to protect the applicant or any other member of the applicant's family or household. *Dolgener*, 651 S.W.3d at 259 (citing Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a)).

The general rule is that the duration of a Family Code protective order may not exceed two years. Tex. Fam. Code Ann. § 85.025(a). However,

> (a-1)  the court may render a protective order sufficient to protect the applicant and member's of the applicant's family or household that is effective for a period that exceeds two years if the court finds that the person who is subject to the protective order[10]:

> (1) committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household . . . .

Tex. Fam. Code Ann. § 85.025(a-1); *Straughan v. Girsch*, No. 14-20-00763-CV, 2022 WL 2977049, at *3 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet. h.) (mem. op.). "Family violence" means:

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault or sexual assault, but does not include defensive measures to protect oneself;

---

[10] We note that Derrick does not argue that the evidence of violence before the trial court was insufficient to support *the length* of the protective order; rather, Derrick argues the evidence was simply insufficient to support the findings needed for the entry of a protective order for longer than two years—i.e., that there was family violence, including a felony offense involving family violence, and a future risk of family violence.

23

(2) abuse, as that term is defined by [§] 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by [§] 71.0021.

Tex. Fam. Code Ann. § 71.004; *see Dolgener v. Dolgener*, 651 S.W.3d 242, 255 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also id.* §§ 71.003 (defining "family"), 71.005 (defining "household").

Intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative meets the statutory definition. *See* Tex. Fam. Code Ann. § 71.004(1); Tex. Pen. Code Ann. § 22.01(a)(3) (defining "assault"). Given the remedial nature of the Family Code's protective order provisions, courts broadly construe its provisions to effectuate its humanitarian and preventative purposes. *Burt*, 528 S.W.3d at 553; *Boyd*, 425 S.W.3d at 430; *see Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## B. STANDARD OF REVIEW

We review the trial court's findings in a protective order proceeding that family violence has occurred and is likely to occur in the future for legal and factual sufficiency. *Dolgener*, 651 S.W.3d at 256.

### 1. Legal Sufficiency

Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the

finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31.

### 2. Factual Sufficiency

In a factual sufficiency review, we examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *See id.* Having considered and weighed all the evidence, we should set aside the judgment only if the evidence is so weak, or the finding so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Boyd*, 425 S.W.3d at 429 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)); *see In re A.C.*, 560 S.W.3d at 631.

### C.   ANALYSIS

#### 1.   Finding of Family Violence

In his fourth issue, Derrick argues the evidence was insufficient to support the protective order in favor of N.F. because Derrick did not commit family violence towards N.F. To enter a protective order in favor of N.F., the trial court had to find that Derrick committed family violence against Janell or N.F., in addition to finding that family violence was likely to reoccur in the future. *See* Tex. Fam. Code Ann. § 81.001; *see also Dolgener*, 651 S.W.3d at 259–60 ("This is because an applicant's family members may be at risk of suffering family violence as a result of their relationship to the applicant, even though they have not yet suffered harm.").

Here, there was evidence that Derrick physically assaulted Janell, Derrick's family member, by strangling her on two separate occasions. *See* Tex. Fam. Code Ann. § 71.003. This is legally sufficient evidence to support a finding that family violence by Derrick occurred. *See In re A.C.*, 560 S.W.3d at 630–31. Additionally, the trial court heard testimony that Derrick assaulted Janell by physically hitting her

on August of 2020, by slapping her on multiple occasions, and that Derrick sexually assaulted Janell at the Thanksgiving party in 2018.

As to factual sufficiency, the evidence in the record contrary to the finding of family violence is that: Janell told Deputy Sandoval on December 13, 2020, that there was no history of violence; Deputy Torres did not see bruises on Janell three-and-a-half weeks after December 14; Derrick's military friends did not witness anything involving a sexual assault at the 2018 Thanksgiving party; and Janell was the aggressor in the August 2020 event. Having reviewed the record as a whole, we cannot conclude that a finding of family violence by Derrick is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Boyd*, 425 S.W.3d at 429. Therefore, we conclude the evidence is not factually insufficient to support a finding that Derrick committed family violence against Janell.[11] *See id.* at 433. As such, we reject Derrick's argument that there is insufficient evidence supporting the protective order for N.F. *See* Tex. Fam. Code Ann. §§ 71.004(1), 81.001, 82.002(a), 85.001(a); *Dolgener*, 651 S.W.3d at 259.

We overrule Derrick's fourth issue.

### 2. Finding of Future Violence

In his fifth issue, Derrick argues the evidence was legally and factually insufficient to support the trial court's finding of future violence because "[t]he only

---

[11] To enter a protective order, the trial court had to find that family violence occurred and is likely to occur in the future. Tex. Fam. Code Ann. § 81.001; *see id.* 85.001(a). The Family Code does not limit the protected persons listed under a protective order solely to individuals who directly suffered family violence. *Dolgener*, 651 S.W.3d at 259–60; *see* Tex. Fam. Code Ann. § 85.001. Because we conclude that there was sufficient evidence of family violence against Janell, we need not address Derrick's argument that there was insufficient evidence he committed family violence against N.F. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

direct evidence suggesting future violence came from Janell's opinion . . . ."[12]

"The statutory language of [§ 85.001] does not require that a likelihood finding [of future family violence] be based on more than one act of family violence." *Boyd*, 425 S.W.3d at 432; *Dolgener*, 651 S.W.3d at 260; *see* Tex. Fam. Code Ann. § 85.001. On the contrary, courts have recognized that oftentimes past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order. *Dolgener*, 651 S.W.3d at 260; *Boyd*, 425 S.W.3d at 432; *see Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *see also In re Epperson*, 213 S.W.3d 541, 543–44 & n.3 (Tex. App.—Texarkana 2007, no pet.) (concluding that past and continuing pattern of behavior showed applicant was reasonable in fearing respondent would commit acts of "family violence" in the future). While a pattern of family violence is sufficient to support a likelihood finding, a pattern is not a necessary prerequisite to such a finding. *Boyd*, 425 S.W.3d at 432.

Here, there was evidence of a pattern of family violence by Derrick against Janell from the time Janell was pregnant with N.F. The record indicates multiple instances testified to by Janell where Derrick committed family violence against her and that instances of abuse occurred about once a month. In the text messages between Derrick and Janell, admitted into evidence, Janell and Derrick discuss Derrick's anger issues, as Janell asks him to work on his anger. Janell states, "The rage has always been there[,] the meanness has always been there," with Janell

---

[12] Derrick does not argue that the evidence of violence before the trial court was insufficient to support *the length* of the protective order, rather than any finding needed to support the entry of a protective order. *See* Tex. R. App. P. 38.1(f), (h), (i).

describing their relationship as "toxic." The text messages support an inference that Derrick's anger issues remain unresolved. Finally, Janell testified that Derrick would "admit to what he's done and then we'll go back to it again." Based on this evidence, the trial court could reasonably have concluded that family violence was likely to occur in the future. *See Dolgener*, 651 S.W.3d at 261; *Teel*, 309 S.W.3d at 604; *In re Epperson*, 213 S.W.3d at 544.

Derrick points to evidence that he had not made any attempts to contact Janell since January of 2021, approximately six months prior to trial. However, "[e]vidence of improved conduct, especially over a short duration, does not conclusively negate the probative value of a long history of violent behavior and inappropriate choices." *In re M.M.M.*, No. 01-21-00269-CV, 2021 WL 5365102, at *15 (Tex. App.— Houston [1st Dist.] Nov. 18, 2021, pet. denied) (mem. op.)

Derrick also argues that there was limited credible evidence that violence occurred on December 14, 2020, because "Janell told police on December 13, 2020, that there had never been family violence in the past" and because "[p]ictures taken after the December 14th alleged assault don't mesh with Janell's testimony."[13] However, Janell testified regarding the family violence that allegedly occurred on December 14, 2020, and the text messages between Derrick and Janell support this allegation. Additionally, Officer Torres testified she believed Janell's allegations after reviewing text messages between Janell and Derrick. Finally, in the text messages between Janell and Derrick admitted into evidence from December 16, 2021, Janell mentions Derrick's violence towards her. Derrick states in one of the text messages "I promise no more violence yyyou [sic] right I'll go work on that starting today[.]" In a text from December 17, 2021, Janell tells Derrick that she

---

[13] No pictures taken after the December 14th assault were introduced into the record or discussed at trial.

28

"was at the doctor checking out my neck, throat after you choked me out yesterday."
When there is competing evidence, the trial court as factfinder is free to believe one witness and disregard another witness's conflicting testimony. *Dolgener*, 651 S.W.3d at 257; *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We conclude the evidence is legally sufficient and not factually insufficient to support the trial court's finding of a danger of future violence. *See In re A.C.*, 560 S.W.3d at 630–31.

We overrule Derrick's fifth issue.

### 3. Finding of Felony Offense Involving Family Violence

In his sixth issue, Derrick challenges the trial court's finding that he committed a felony offense involving family violence against Janell, which is required to support a protective order for a period longer than two years. *See* Tex. Fam. Code Ann. § 85.025(a-1).

Here, Janell testified her breathing was restricted when Derrick choked her on December 14 for "about a half a second or so." Assault against a family member by impeding breath is a felony offense. Tex. Penal Code Ann. § 22.01(a), (b)(2)(B). Texas Penal Code § 22.01 provides:

(a) A person commits an offense if the person:

    (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

. . .

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

    . . .

    (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:

. . .

     (B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth . . . .

Tex. Penal Code Ann. § 22.01(a), (b)(2)(B); *see also* Tex. Fam. Code Ann. § 71.003 (defining "Family").

Without citation to supporting authority, *see* Tex. R. App. P. 38.1(i), Derrick argues that "[a] vigorous shaking that 'restricts' breathing for 'maybe half a second' is simply not sufficient evidence to prove that Derrick impeded the normal breathing of [Janell] by applying pressure to her neck." However, the Texas Court of Criminal Appeals has interpreted "impeding" under Penal Code § 22.01(b)(2)(B) "to include any degree of impediment to one's normal breathing," "because 'the plain meaning of the statutory language indicates that any impediment to normal breathing' is sufficient . . . ." *Philmon v. State*, 609 S.W.3d 537, 537 (Tex. Crim. App. 2020) (quoting *Marshall v. State*, 479 S.W.3d 840, 844–45 (Tex. Crim. App. 2016)). Accordingly, we reject Derrick's argument that the length of time he impeded Janell's breath was insufficient, and we conclude that the evidence is legally and factually sufficient to support the trial court's finding that Derrick committed a felony offense involving family violence. Accordingly, the evidence is sufficient to support the trial court's entry of a protective order for a period of longer than two years. *See* Tex. Penal Code Ann. § 22.01(a), (b)(2)(B).[14]

---

[14] We note that we review the prohibitions and awards entered in a protective order for an abuse of discretion. *Dolgener*, 651 S.W.3d at 262; *see* Tex. Fam. Code Ann. § 85.025(a-1) (provided that the court "may" enter a protective order exceeding two years if the court finds that the person subject to the order committed a felony offense involving family violence against the applicant or member of the household); *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations."). When challenging such a finding left to the trial court's discretion, legal and factual sufficiency of the evidence are not independent grounds for asserting error but

We overrule Derrick's sixth issue.

## VI. CONCLUSION

We reverse in part the trial court's order to the extent it lists Janell as a "protected person" under the order. We affirm the remainder of the trial court's order as challenged on appeal.

/s/ Margaret "Meg" Poissant

Panel consists of Justices Spain, Poissant, and Wilson.

---

are instead relevant factors in assessing whether the trial court abused its discretion. *Schafman v. Schafman*, No. 01-20-00231-CV, 2022 WL 962466, at *4 (Tex. App.—Houston [1st Dist.] Mar. 21, 2022, no pet.) (mem. op.) (citing *Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). In determining whether an abuse of discretion exists because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *Id.* Answering the first question involves the traditional sufficiency of evidence review, and answering the second question involves determining whether the trial court made a reasonable decision. *Id.* Derrick does not argue on appeal that the trial court abused its discretion by making an unreasonable decision when it entered a protective order as to of N.F. until N.F. reaches the age of eighteen. *See* Tex. R. App. P. 38.1(f), (h), (i); *see also Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.").